UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
------------------------------------------------------x
                                                      :
EUNICE ALBAN                                          :          3:11 CV 1119 (CSH)
                                                      :
V.                                                    :
                                                      :
MICHAEL J. ASTRUE,                                    :
COMMISSIONER OF SOCIAL SECURITY                       :          DATE: DECEMBER 6, 2012
                                                      :
------------------------------------------------------ x
```

RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR ORDER REVERSING THE
DECISION OF THE COMMISSIONER OR IN THE ALTERNATIVE, MOTION FOR REMAND
AND ON DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and

1383(c)(3), as amended, seeks review of a final decision by the Commissioner of Social

Security ["SSA"] denying plaintiff disability insurance benefits ["DIB"].

I.  ADMINISTRATIVE PROCEEDINGS

On October 29, 2008, plaintiff Eunice Alban, applied for DIB claiming that she has

been disabled since October 1, 2008, due to degenerative hip problems, arthritis, lower back

pain, asthma and migraines. (See Certified Transcript of Administrative Proceedings, dated

May 24, 2012 ["Tr."] 122-25; see Tr. 163, 170-78, 182, 186-87, 199).  Plaintiff's application

was denied initially and upon reconsideration.  (Tr. 45-73, 77-83).  On August 31, 2009,

plaintiff filed a request for a hearing before an Administrative Law Judge ["ALJ"] (Tr. 84-85;

see Tr. 86-92), and on December 3, 2010, a hearing was held before ALJ Eileen Burlison, at

which plaintiff testified. (Tr.  19-44; see Tr. 93-107, 115-21).  Plaintiff was represented by

counsel.  (Tr. 75-76; see Tr. 19).  On February 17, 2011, ALJ Burlison issued her decision

finding that plaintiff has not been under a disability through the date of her decision.  (Tr.

4-14).  On May 24, 2011, the Decision Review Board issued its notice that it did not complete

a timely review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

On July 15, 2011, plaintiff, proceeding pro se, filed her complaint in this pending action. (Dkt. #1).[1]  Four days later, Senior United States District Judge Charles S. Haight, Jr. referred this file to this Magistrate Judge. (Dkt. #4).   On July 11, 2012, defendant filed his answer, with a copy of the certified administrative transcript attached. (Dkt. #16;[2] see also Dkts. ##7-9, 11-12, 15).   Counsel filed an appearance for plaintiff on August 1, 2012. (Dkt. #18).

On September 12, 2012, plaintiff filed her Motion for Judgment on the Pleadings, and brief in support. (Dkts. ##19-20).  On October 5, 2012, defendant filed his Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) with Reversal and Remand of the Cause to the Defendant (Dkt. #21), and six days later, on October 11, 2012, plaintiff filed a reply brief opposing remand.  (Dkt. #22).

For the reasons stated below, plaintiff's Motion for Judgment (Dkt. #19) is granted; defendant's Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) with Reversal and Remand of the Cause to the Defendant (Dkt. #21) is denied.

## II. STANDARD OF REVIEW

The scope of review of a Social Security disability determination involves two levels of inquiry.  First, the court must decide whether the Commissioner applied the correct legal principles in making the determination.   Second, the court must decide whether the

---

[1]Plaintiff also filed a Motion for Leave to Proceed in forma pauperis (Dkt. #2), which motion was granted on July 19, 2011.  (Dkt. #5).

[2]The certified administrative transcript is dated May 24, 2012. (Dkt. #16).  There was some duplication in the administrative record.  See note 7 infra.

determination is supported by substantial evidence.  See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)(citation omitted).  Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(citation omitted); see Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998)(citation omitted).  The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact.  See Gonzalez v. Apfel, 23 F. Supp.2d 179, 189 (D. Conn. 1998)(citation omitted); Rodriguez v. Califano, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)(citations omitted).  However, the court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  See Dotson v. Shalala, 1 F.3d 571, 577 (7th Cir. 1993)(citation omitted).  Instead, the court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings.  See id. Furthermore, the Commissioner's findings are conclusive if supported by substantial evidence and should be upheld even in those cases where the reviewing court might have found otherwise.  See 42 U.S.C. § 405(g); see also Beauvoir v. Charter, 104 F.3d 1432, 1433 (2d Cir. 1997)(citation omitted).

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.  See  42 U.S.C. § 423(a)(1).  "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1).

Determining whether a claimant is disabled requires a five-step process.  See 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is currently working. See 20 C.F.R. § 404.1520(a)(4)(I).  If the claimant is currently employed, the claim is denied.

See id.  If the claimant is not working, as a second step, the ALJ must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is also denied.   See 20 C.F.R. § 404.1520(a)(4)(ii).   If the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in Appendix 1 of the Regulations [the "Listings"].  See 20 C.F.R. § 404.1520(a)(4)(iii); Bowen v. Yuckert, 482 U.S. 137, 141 (1987); Balsamo, 142 F.3d at 79-80.  If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled.  See 20 C.F.R. § 404.1520(a)(4)(iii); see also Balsamo, 142 F.3d at 80.  If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that he cannot perform his former work.   See 20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant shows he cannot perform his former work, the burden shifts to the Commissioner to show that the claimant can perform other gainful work.  See Balsamo, 142 F.3d at 80 (citations omitted).  Accordingly, a claimant is entitled to receive disability benefits only if he shows he cannot perform his former employment, and the Commissioner fails to show that the claimant can perform alternate gainful employment.  See 20 C.F.R. § 404.1520(a)(4)(v); see also Balsamo, 142 F.3d at 80 (citations omitted).

The Commissioner may show a claimant's Residual Functional Capacity ["RFC"] by using guidelines ["the Grid"].  The Grid places claimants with severe exertional impairments, who can no longer perform past work, into employment categories according to their physical strength, age, education, and work experience; the Grid is used to dictate a conclusion of disabled or not disabled.  See 20 C.F.R. § 416.945(a)(defining "residual functional capacity" as the level of work a claimant is still able to do despite his or her physical or mental limitations).  A proper application of the Grid makes vocational testing unnecessary.

4

III.  DISCUSSION

Following the five step evaluation process, ALJ Burlison found that plaintiff has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date of disability. (Tr. 9; see 20 C.F.R. §§ 404.1571 et seq.).  ALJ Burlison then concluded that plaintiff has the following severe impairments -- status post right and left hip replacements, degenerative disc disease, lumbar radiculitis, and asthma (Tr. 10; see 20 C.F.R. § 404.1520(c)), but these impairments or combination of impairments do not meet or equal an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Part 404.  (Id.; see 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  In addition, at step four, the ALJ found that after consideration of the entire record, plaintiff has the RFC to perform sedentary work with a sit/stand option, and she should work in a "reasonably clean environment"; plaintiff is able to lift and carry ten pounds occasionally and nominal weight frequently, walk and/or stand for about two hours of an eight-hour workday, and sit for about six hours of an eight-hour workday, and should avoid hazards, such as working at unprotected heights and operating dangerous moving machinery.  (Tr. 10-13; see 20 C.F.R. § 404.1567(a)).  The ALJ concluded that plaintiff is unable to perform her past relevant work as an ophthalmic assistant, but there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Tr. 13; 20 C.F.R. §§ 404.1565, 404.1569, 404.1569(a)).  Accordingly, the ALJ concluded that plaintiff has not been under a disability from October 1, 2008, through the date of her decision.  (Tr. 14; see 20 C.F.R. § 404.1520(g)).

A. LISTING 1.04

Plaintiff asserts that she is per se disabled under Listing 1.04(A), but the ALJ's analysis at step three was confined to this sole sentence: "The evidence of record does not

5

include the medical findings or opinion evidence necessary to conclude that the claimant's impairments meet or medically equal any listed impairment." (Tr. 10; Dkt. #20, at 14).[3]  In response, defendant contends that to meet Listing 1.04, a "claimant must establish that she had functional limitations resulting from her impairment, including the inability to ambulate effectively, and she has failed to do so in this case." (Dkt. #21, Brief at 2-3).[4]  In her reply brief, plaintiff counters that only subsection (C) of Listing 1.04 requires the inability to ambulate effectively, and thus defendant has "implicitly conceded that [plaintiff] is per se disabled according to Medical Listing 1.04(A)." (Dkt. #22, at 2).

Listing 1.04 relates to disorders of the spine, and there are three subsections of Listing 1.04: (A), (B), and (C), only one of which needs to be satisfied for a claimant to meet the Listing requirements.  To satisfy Listing 1.04(A), plaintiff must establish the existence of a disorder of the spine:

> (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root . . . or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

---

[3]In addition to this argument, plaintiff also contends that the ALJ failed to follow the treating physician rule (Dkt. #20, at 14-16); the ALJ failed to properly evaluate plaintiff's credibility (id. at 17-20); and the ALJ erred by relying on the Medical-Vocational Guidelines.  (Id. at 20-21).

[4]Defendant acknowledges errors on the part of the ALJ and requests that the Court remand this case so that the Appeals Council can instruct the ALJ to (1) further evaluate the treating physicians' assessment, and provide a rationale for why any of the assessed limitations are not credited; (2) re-evaluate plaintiff's RFC; and (3) determine if plaintiff could perform other work that exists in significant numbers in the national economy.  (Dkt. #21, Brief at 1-2).

Pt. 404, Subpt. P, App. 1, Listing 1.04(A).[5]

There are objective medical findings that plaintiff suffers from the initial requirement of the Listing in that the MRI imaging shows that plaintiff has a herniated nucleus pulposus and degenerative disc disease with compression of a nerve root.  (See, e.g., Tr. 436, 458). Specifically, MRI results on October 13, 2008 revealed a "[m]oderate sized left paracentral extruded disc herniation at L5-S1[,]" and an "associated left S1 nerve root compression." (Tr. 274).[6]  On June 28, 2010, an MRI of plaintiff's cervical spine revealed "[m]ultilevel degenerative changes[,] . . . moderate right foraminal stenosis at the C4-5 level due to facet joint arthropathy[,] [and] [s]egmentation anomaly at the C2-3 level."  (Tr. 429, 456).  As of October 1, 2010, an MRI revealed worsening results: the "[m]oderate to large sized L5-S1 disc herniation[,] [and] [m]oderate to severe spinal stenosis with S1 nerve root compression, left greater than right." (Tr. 427, 451).

In addition, the medical record is replete with entries reflecting neuro-anatomic distribution of pain (radiating pain), limited motion of the spine, muscle weakness, sensory loss, and positive straight leg raising, the existence of which satisfies the requirements set forth subpart A of Listing 1.04.  Specifically, in March 2009, Dr. John Mangieri, plaintiff's treating orthopedist, noted pain in plaintiff's buttocks with straight leg raising on the left, a significant limp on the left side, pain in her buttock with flexion, and "a lot of weakness in

---

[5]To satisfy Listing 1.04(C), a claimant must establish the initial criteria of disorders of the spine in Listing 1.04, along with, "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 1.04(C).

[6]The MRI also revealed a fairly large ovarian cyst.  (Id.).

Plaintiff began treatment for hip pain in May 2008, after she twisted her right hip when she was pulled while walking her dog.  (Tr. 272).

her hip musculature." (Tr. 436).  On April 1, 2009, after a "flare up" that required plaintiff to go to the Emergency Room to receive Morphine, Dr. Mangieri  noted that plaintiff was suffering from radiating pain as she had "numbness with . . . pain in the left buttock into the leg with a warm feeling down into the leg and numbness in the leg." (Tr. 441).  Eight days later, plaintiff had limited motion, described as limited extension with "pain extending from the flexed position."  (Id.).  In September 2009, plaintiff had a "slight limp[,]" and the straight leg raising "cause[d] some discomfort in her left buttock with some tenderness . . . ." (Tr. 442).  Later that month, plaintiff's straight leg raising "cause[d] some pulling in the back of the knees[,]" and a review of previous X-rays revealed "definite poly wear on the right side" which would require "another [surgical] revision . . . when the wear gets worse[.]" (Tr. 443).  In November 2009, Dr. Mangieri noted that X-rays of plaintiff's cervical spine "revealed a slight reverse in her normal cervical lordosis suggesting muscle spasm with pre-existing degenerative disc disease at C5-6 with significant narrowing, sclerosis and ostepohytes[,]" as well as a "congenital fusion of C2 [and] C3."  (Tr. 444)(emphasis omitted).[7]

     In February 2010, plaintiff had lower back pain radiating to her buttocks, thighs and heel.  (Tr. 477).  On September 2, 2010, Dr. Mangieri noted plaintiff's muscle weakness and

_____

[7]In December 2009 and January 2010, plaintiff's back was "much better[,]" and she had "excellent rotation of the cervical spine."  (Tr. 445-46).

     As Dr. Rahul Anand, a pain specialist, noted in September 2010, plaintiff's lower back and leg pain "temporarily improves with epidural injections."  (Tr. 463).  Plaintiff received such injections in May and June 2009, and April and July 2010. (Tr. 331-34, 344-49, 468-69, 472-75, 500-03).  In August and September 2009, plaintiff received intra-articular facet joint injections (Tr. 339-40, 485-86, 490, 496-97, 513-14, 518), and in October 2009, June and August 2010, she received radiofrequency ablation (Tr. 466-67, 470-71, 480-83, 494-95, 498-99, 508-11), all with temporary relief.  (See also Tr. 335-37, 341-43, 350-52, 365-67, 463-65, 476-79, 487-89, 491-93, 504-07, 515-17).

sensory loss in that she was "getting pain in the right leg and pins and needles, particularly after driving[,]" she had "limited lumbar flexion to about 65 degrees with pulling pain[,]" along with "mild tenderness in the SI area bilaterally with extension from the flexed position causing discomfort in her back and to her right leg with straight leg raising[,]" and she had "aching in her cervical spine with decreased range of motion, spasm and tenderness." (Tr. 426). A week later, an examination by Dr. Rahul Anand,[8] plaintiff's treating pain management specialist, revealed cervical spine trigger points, weakness of the lower extremities, diminished sensation throughout the upper and lower extremities, an antalgic gait, and decreased lumbar range of motion. (Tr. 365-66). Later that month, Dr. Mangieri noted that plaintiff had "aching down into the leg but with more numbness[,]" (Tr. 438), and Dr. Anand noted plaintiff's radiating pain, and limited extension, flexion and rotation. (Tr. 463-64).

Similarly, on October 14, 2010, it was Dr. Mangieri's "objective" assessment that plaintiff:

> ha[d] tenderness bilaterally with lumbar spasm, decreased range of motion. Lumbar flexion increases the pain. Positive straight leg raising and some tingling with sensory testing on the lateral aspect of the right foot but no definite weakness either in the plantar flexors or the dorsiflexors.
>
> On the left foot she has some numbness and decrease sensation in the lateral aspect of the foot. Standing seems to increase the pain. . . . .

(Tr. 425).[9] As of November 11, 2010, plaintiff had "intermittent numbness in the right foot with bending[,]" and limited motion in the spine. (Tr. 439). In his Physical Medical Source

---

[8]See note 7 supra.

[9]Additionally, on December 15, 2009, plaintiff had "localized tenderness in the right SI area and . . . an increased limp on the right side[,]" with "increased pain in her buttock" caused by straight leg raising. (Tr. 431).

Statement, dated November 24, 2010, Dr. Mangieri noted plaintiff's symptoms are pain, weakness, instability, fatigue, and numbness, which are confirmed by radiographs, decreased range of motion, and muscle spasms, that have required multiple surgeries, medications, and epidural steroid injections.  (Tr. 447).   Similarly, in the Chronic Pain Residual Functional Capacity Questionnaire completed by Dr. Anand the next day, Dr. Anand noted that in addition to suffering from low back pain with pain radiating to her toes, plaintiff has reduced range of motion, sensory changes, reflex changes, positive straight leg raising, trigger points, muscle spasm, muscle weakness, and an abnormal gait.  (Tr. 458).

The foregoing consists of extensive findings that satisfy the requirements of Listing 1.04(A).   However, rather than addressing the voluminous support for a conclusion that plaintiff's cervical spine disorder is of Listing level severity, the ALJ in this case, limited her consideration of the foregoing to the single sentence, "The evidence of record does not include the medical findings or opinion evidence necessary to conclude that the claimant's impairments meet or medically equal any listed impairment."  (Tr. 10).  As defendant acknowledges, the ALJ's decision contains several errors, yet defendant does not address the ALJ's analysis, or the lack thereof, at step three in the sequential analysis.[10]   The ALJ's

---

[10]As addressed above, plaintiff correctly observes that defendant's contention that plaintiff's impairment does not meet Listing 1.04 because she cannot establish an "inability to ambulate effectively[,]" is thoroughly misplaced as plaintiff need only establish that her impairment meets Listing 1.04(A), (B), or (C), and the inability to ambulate effectively is a condition of Listing 1.04(C). (See Dkt. #21, Brief at 2-3; Dkt. #22, at 2); see note 5 supra.

In support of his contention that plaintiff has not established an inability to ambulate effectively, and thus cannot satisfy Listing 1.04, defendant cites to Meredith v. Barnhart, No. Civ.A. 03-6422,  2004 WL 2367816, at *2 (E.D. Pa. Oct. 19, 2004), in which case the district judge held that when considering Listing 1.04(A), it was proper for the ALJ to consider a plaintiff's functional limitations as Section 1.00(B) reads: "'regardless of the cause(s) of the musculosketal impairment,' one must also have functional limitations resulting from the disorder[,] . . . [which] include: 'the inability to ambulate effectively on a sustained basis for any reason . . . .'" (footnote omitted). See also Post v. Comm'r of Soc. Sec., No. 1:10-cv-271, 2011 WL 4954053, at *5 (W.D. Mich. Sept. 26, 2011), approved absent objection, 2011 WL 4954255 (W.D. Mich. Oct. 17, 2011).  In Meredith,

singular conclusion stands in stark contrast to the extensive and uncontradicted findings

detailed above that satisfy the Listing requirements.  The ALJ's lack of analysis and her utter

"failure to provide reasons for [her] statement[ ] leave this Court unable to determine

whether [her] conclusion that [p]laintiff's condition does not meet any listing is supported

by substantial evidence." Velazquez v. Barnhart, No. 3: 02 CV 1264(MRK), 2004 WL 367614,

at * 7 (D. Conn. Feb. 19, 2004), citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir.

1982)("Cases may arise, however, in which we would be unable to fathom the ALJ's rationale

in relation to evidence in the record, especially where credibility determinations and inference

drawing is required of the ALJ. In such instances, we would not hesitate to remand the case

for further findings or a clearer explanation for the decision. . . .").  In this case, a remand

is not appropriate as the medical evidence indicates that plaintiff's impairment meets or

---

plaintiff did not ask the Court to review whether the ALJ erred in finding that plaintiff had no
impairment to the cervical spine, see id. 2004 WL 2817816, at *6, and the district judge concluded
that the ALJ "failed to give due consideration to the objective medical evidence[,]" and having
considered such evidence, the Commissioner's determination was reversed and an award of
benefits to plaintiff was ordered. Id. at *6-7.

  Section 1.00(B) is referenced in Listing 1.04(C), in which a claimant must establish the
existence of a disorder of the spine defined in Listing 1.04, with "[l]umbar spinal stenosis resulting
in pseudoclaudication, established by findings on appropriate medically acceptable imaging,
manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate
effectively, as defined by 1.00B2b." Such reference to Section 1.00(B) is not otherwise found in
Listing 1.04, and particularly not found in the plain language of Listing 1.04(A).  However, it is
notably and purposely found in other musculoskeletal Listing subsections, reflecting an intent for its
application where included.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing §§ 1.02A, 1.03, 1.04C,
1.05B, 1.05C, 1.06B; see generally Oliver v. U.S. Post Office, 696 F.2d 1129, 1131 (5th Cir.
1983)(the plain language of an administrative regulation controls judicial construction of it). See
also Clark v. Astrue, Civ. Action No. 11-1331-JWL, 2012 WL 4856996, at *5 (D. Kan. Oct. 12,
2012)(in analyzing whether Listing 1.04 is met, the district court addressed each subsection
separately, and noted that Listing 1.04(C) cannot be met because plaintiff, inter alia, pointed to "no
. . . inability to ambulate effectively as defined in 20 C.F.R., Pt. 404, Subpt. P, § 100B2b[,]" but not
applying such criterion to Listing 1.04(A) or (B)); Hansen v. Astrue, No. 2:10-cv-00457-CWD, 2012
WL 1032533, at *4 (D. Idaho Mar. 27, 2012)(Court concludes neither Listing 1.04(A), (B), or (C) is
met, noting that Listing 1.04(C) is not met as there was no evidence of lumbar spinal stenosis nor
was their evidence that the plaintiff could not ambulate effectively).  In light of the foregoing, the
Court declines to adopt defendant's assertion that plaintiff cannot establish Listing 1.04(A) without
establishing that an inability to ambulate effectively.

equals one of the impairments in the Listings; thus, plaintiff is automatically considered disabled.   See 20 C.F.R. § 404.1520(a)(4)(iii).   Accordingly, the determination of the Commissioner is reversed, and the Commissioner is ordered to award DIB to plaintiff, retroactive to the date of her application for benefits.

B. REMAINING ISSUES

In light of the conclusion reached above, the Court need not address either party's remaining arguments.

IV. CONCLUSION

Accordingly, for the reasons stated above, plaintiff's Motion for Judgment on the Pleadings (Dkt. # 19) is granted, and defendant's Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) with Reversal and Remand of the Cause to the Defendant  (Dkt. #21) is denied.

The parties are free to seek the district judge's review of this recommended ruling. See 28 U.S.C. § 636(b)**(written objection to ruling must be filed within fourteen calendar days after service of same)**; FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit)**.

Dated at New Haven, Connecticut, this 6th day of December, 2012.


 _/s/ Joan G. Margolis, USMJ____
Joan Glazer Margolis
United States Magistrate Judge